UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANGELA GONNEVILLE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LENS.COM, INC., <br><br> Defendant. | Civil Action <br> No. 24-cv-11110-PBS <br><br> Nevada Case Number: <br> 2:24-cv-01151-RFB-BNW |

**MEMORANDUM AND ORDER**

March 10, 2025

Saris, D.J.

**INTRODUCTION**

In this putative class action, Plaintiff Angela Gonneville alleges that Defendant Lens.com, Inc. ("Lens.com") charges customers an undisclosed processing fee for purchases of contact lenses through its website. Gonneville filed suit in Massachusetts, her home state. Lens.com now moves to transfer venue to the District of Nevada under 28 U.S.C. § 1404(a) on the basis of a forum selection clause that it argues Gonneville agreed to when she ordered contact lenses on its website.

After hearing, the Court **ALLOWS** Lens.com's motion to transfer (Dkt. 18).

1

**BACKGROUND**

I. **Lens.com's Processing Fees**

Lens.com is an online seller of contact lenses. Gonneville alleges that Lens.com adds an undisclosed and non-itemized processing fee to online orders at the end of the transaction as the customer's credit card is processed. Lens.com sometimes discloses this fee on the packing slip delivered with the order. In other instances, Lens.com never discloses the existence or amount of the fee.

Gonneville ordered contact lenses from Lens.com three times between August 2019 and April 2021. For each purchase, Lens.com charged Gonneville a processing fee ranging from $5.21 to $55.97 that was not disclosed or itemized during the online ordering process. Gonneville describes numerous complaints from other customers about Lens.com's hidden processing fees. When Gonneville asked Lens.com about the fee, the company told her that it used to be disclosed on the website but the disclosure had been removed.

II. **Lens.com's Ordering Process**

Gonneville used a computer to order from Lens.com. She made her first purchase as a new customer and her second and third purchases as an existing customer.

To make a purchase as a new customer, a user first adds a

product to her cart and then enters her prescription information.[1] The third webpage summarizes the order with a "Go to Checkout" button. Clicking on that button brings up the following "Shipping Information" page:



Dkt. 20-2 at 1. Beneath the fields for the shipping information is a red "Continue" button, which displays in approximately the following size on the computer screen:

---

[1] Lens.com has submitted declarations describing how a user makes a purchase on its website and a video depicting the checkout process. See Dkts. 20, 38-39, 38-1. Gonneville admits that, as relevant for present purposes, Lens.com's submissions accurately represent how the website looked when she made her purchases.

3



Dkt. 38-1 at 0:43. Under that button, the page includes the following disclosure in font that is slightly smaller than most of the other text: "By continuing you agree to our Terms of Use & Privacy Policy." Id. While a still image that Lens.com submitted depicts this disclosure in black font, a video of the checkout process also provided by Lens.com makes clear that the text is gray. Compare Dkt. 20-2 at 1 (still image), with Dkt. 38-1 at 0:43 (video). Clicking on the "Continue" button after entering shipping information takes the user to a final "Submit Order" page, which summarizes the order and asks for payment information.[2]

If the user hovers over the phrase "Terms of Use," the text turns red and displays a hyperlink that goes directly to Lens.com's Terms and Conditions of Use ("Terms of Use"). The Terms of Use include the following choice-of-law provision and forum selection clause:

---

[2] Instead of clicking on the "Continue" button, a new or existing user can proceed by scrolling further down the page, viewing an order summary, and then clicking on a "Go to Checkout" button. The "Go to Checkout" button displays similarly to the "Continue" button and sits above the same disclosure about the Terms of Use. Gonneville states that she used the "Continue" button rather than the "Go to Checkout" button for all three of her orders, so the Court focuses its analysis on the "Continue" button method.

> These Terms and Conditions of Use shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to choice of law rules. Any litigation arising out of or in connection with the use of this site shall be exclusively venued in state or federal courts located in Clark County, Nevada . . . .

Dkt. 20-1 at 7.

An existing user follows the same steps to reach the "Shipping Information" webpage. Text near the top of the page reads "Returning Customer? Sign In." Dkt. 38-1 at 2:04. Clicking on "Sign In" triggers a pop-up with fields for the user's email and password and a red "Sign In" button. Directly beneath the button is the same disclosure -- "By continuing you agree to our Terms of Use & Privacy Policy" -- in slightly smaller gray font. Id. at 2:07. The phrase "Terms of Use" includes a hyperlink. If the user inputs her email and password and clicks "Sign In," the website returns to the "Shipping Information" page with the user's address and contact information filled in. Like a new customer, an existing customer then clicks on the red "Continue" button to advance to the final page of the checkout process. The same disclosure about the Terms of Use is repeated under the "Continue" button in identical formatting.

**III. Procedural History**

In February 2024, Gonneville filed this putative class action lawsuit against Lens.com in Massachusetts state court. Lens.com removed the case to federal court under the Class Action Fairness

5

Act of 2005. See 28 U.S.C. § 1332(d)(2). After removal, Gonneville filed an amended complaint asserting four claims based on Lens.com's alleged charging of undisclosed processing fees: 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, 3) unjust enrichment, and 4) violation of Massachusetts General Laws Chapter 93A. Lens.com then moved to transfer venue to the District of Nevada under 28 U.S.C. § 1404(a) on the basis of the forum selection clause in its Terms of Use.[3]

**LEGAL STANDARD**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This provision governs a motion to transfer venue to another federal court based on a forum selection clause. See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 59 (2013).

A court assessing a forum selection clause must first determine if the clause is enforceable. See id. at 62 & n.5 (noting that the question of whether to enforce a forum selection clause under § 1404(a) "presupposes" that the clause is "contractually

---

[3] Lens.com moved, in the alternative, to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the Court allows Lens.com's motion to transfer, it does not address the motion to dismiss.

6

valid"). To be enforceable, the clause must be an "agreed-to provision" of a "valid contract" between the parties. Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 58 (D. Mass. 2011). The court must also evaluate 1) "whether the forum selection clause is mandatory or permissive," 2) "whether the claims at issue fall within" the clause's scope, and 3) whether there is "'a strong showing' of 'some reason the presumption of enforceability should not apply.'" Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc., 997 F.3d 367, 374-75 (1st Cir. 2021) (quoting Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 48 (1st Cir. 2014)).

Under § 1404(a), "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Constr. Co., 571 U.S. at 63 (alteration in original) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Consideration of a § 1404(a) motion normally requires analysis of various private- and public-interest factors, but "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause." Id. at 62-63. For one, "the plaintiff's choice of forum merits no weight," and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. at 63. The court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" as well, although it

7

still may consider the public-interest factors. Id. at 64. Put differently, only when "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer" should a court deny a § 1404(a) motion based on a valid forum selection clause. Id. at 52.

## DISCUSSION

Gonneville's argument against transfer of her lawsuit to the District of Nevada is narrow. She does not contest that the forum selection clause in the Terms of Use is mandatory or that her claims fall within the clause's scope. Nor does she advance any reason why the forum selection clause, if valid, should not be enforced or given controlling weight in the transfer calculus under § 1404(a). Rather, her sole contention is that when she placed her orders on Lens.com's website, she did not form a contract with Lens.com that incorporated the Terms of Use containing the forum selection clause.

The parties dispute whether Nevada or Massachusetts law governs the question of contract formation in this case. Lens.com cites the Nevada choice-of-law provision in the Terms of Use, while Gonneville analyzes the issue under Massachusetts law. The Court need not resolve which state's law applies because "a choice-of-law determination is obligatory only if a material conflict exists between the laws of the interested states." Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 37 (1st Cir. 2020). Under both

8

Nevada and Massachusetts law, traditional contract principles govern the validity of online agreements. See Good v. Uber Techs., Inc., 234 N.E.3d 262, 274 (Mass. 2024); My Daily Choice, Inc. v. Butler, No. 2:20-cv-02178, 2021 WL 3475547, at *6 (D. Nev. Aug. 6, 2021); cf. Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 513-14 (9th Cir. 2023) (rejecting the argument that "Massachusetts law imposes a more stringent standard than California law" for online contract formation and explaining that the Massachusetts Supreme Judicial Court has "engaged in the same 'fact-intensive inquiry' as have other courts").

## I. Online Contract Formation

Online contract formation requires "both . . . notice of the terms [of the contractual offer] and a reasonable manifestation of assent to those terms [so as to constitute acceptance of the offer]." Good, 234 N.E.3d at 274 (alterations in original) (quoting Kauders, 159 N.E.3d at 1049); see My Daily Choice, Inc., 2021 WL 3475547, at *6 ("The enforceability of [an online] agreement turns on whether a user had actual or constructive notice of the terms, sufficient to demonstrate mutual assent to its conditions."). The party seeking to enforce the contract bears the burden of proving its formation. See Kauders, 159 N.E.3d at 1049.

Reasonable notice of the terms is sufficient for online contract formation. See Good, 234 N.E.3d at 275; My Daily Choice, Inc., 2021 WL 3475547, at *6; cf. Adelson v. Harris, 402 P.3d 665,

9

669-70 (Nev. 2017) (discussing caselaw on when a hyperlink offers constructive notice of terms sufficient to form a contract). To assess if a user received reasonable notice, courts evaluate "the totality of the circumstances." Good, 234 N.E.3d at 276 (quoting Archer v. Grubhub, Inc., 190 N.E.3d 1024, 1033 (Mass. 2022)). Relevant factors include "'the nature, including the size, of the transaction,' 'the interface by which the terms are being communicated,' 'the form of the contract,' and 'whether the notice conveys the full scope of the terms and conditions.'" Id. (quoting Kauders, 159 N.E.3d at 1049-50); see Adelson, 402 P.3d at 670 (explaining that courts "look to 'the conspicuousness . . . of the . . . hyperlink[ and] other notices given to users of the [hyperlink]' in determining whether sufficient notice has been provided" (alterations in original) (quoting Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014))). "Ultimately, the offeror must reasonably notify the user that there are terms to which the user will be bound and give the user the opportunity to review those terms." Good, 234 N.E.3d at 276 (quoting Kauders, 159 N.E.3d at 1050). A user reasonably manifests assent to online terms when "[t]he connection between the action [that manifests assent] and the terms [is] direct [and] unambiguous." Id. at 286 (second and fourth alterations in original) (quoting Kauders, 159 N.E.3d at 1054).

10

## II. Parties' Arguments

Gonneville denies that she had actual notice of the Terms of Use on Lens.com's website, and Lens.com does not directly challenge this assertion. Nonetheless, Lens.com argues that Gonneville received reasonable notice of the Terms of Use from the disclosure and hyperlink on the "Shipping Information" webpage that reads "By continuing you agree to our Terms of Use & Privacy Policy." Gonneville manifested assent to the Terms of Use, Lens.com continues, by clicking on the "Continue" button above the disclosure. In making this argument, Lens.com contends that the disclosure appears in legible font offset from the page's white background, that the page is uncluttered, and that the hyperlink is evident from the underlining of the phrase "Terms of Use" and the fact that placing the cursor over the phrase turns the font red. Lens.com also points out that the disclosure is directly below the "Continue" button and unambiguously informs the user that she is agreeing to the Terms of Use by clicking that button.

Gonneville disagrees. She posits that a reasonable user would not expect to enter into a contract with extensive terms and conditions when making an online purchase of a consumer product of modest value. She also contends that the disclosure is in small font that is barely noticeable in comparison to the large, red "Continue" button that sits above it and that the hyperlink is not in the customary blue font. Finally, she argues that the "Shipping

11

Information" page contains enough fields, text, and symbols to distract the user from the disclosure.[4]

### III. **Analysis**

Three other district courts have concluded that individuals who placed orders on Lens.com's website formed a contract with Lens.com that incorporated the Terms of Use. See Martin v. Lens.com, Inc., No. 24-cv-60489, 2024 WL 4826048, at *3-7 (S.D. Fla. Nov. 19, 2024); Fitzpatrick v. Lens.com Inc., No. 24-cv-2700, 2024 WL 4555337, at *3-5 (N.D. Ill. Oct. 23, 2024); Nail v. Lens.com, Inc., No. 24-cv-02531, 2024 WL 3723912, at *2-5 (C.D. Cal. June 20, 2024). After careful review of those courts' decisions, I agree with their conclusion.

Starting with the question of reasonable notice, the nature of the transaction cuts in Gonneville's favor. For this factor, courts consider the monetary value of the transaction and whether the online interaction reflects a one-time transaction or a continuing relationship. See Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1020 (9th Cir. 2024); Good, 234 N.E.3d at 276-77; Kauders, 159 N.E.3d at 1051. Here, Gonneville's contact lens orders

---

[4] The parties' briefing focuses on the disclosure beneath the "Continue" button that appears on the "Shipping Information" page for all users rather than on the identical disclosure that appears in a pop-up when existing users click the "Returning Customer? Sign In" hyperlink. The Court therefore does not address whether the pop-up that appears for existing users is sufficient to form a contract incorporating the Terms of Use.

involved relatively "modest price[s]." Good, 234 N.E.3d at 276. And while she ended up ordering from Lens.com three times over the course of twenty months, each order amounted to the purchase of a consumer good on a one-off basis. A consumer may not understand that ordering contact lenses online would involve the formation of "a contract comprising the comprehensive set of terms offered by [Lens.com]." Id.

That this factor weighs in Gonneville's favor, however, is not dispositive on the question of reasonable notice. See Keebaugh, 100 F.4th at 1019; Good, 234 N.E.3d at 277. Even if the nature of the transaction may not suggest that the user is "agreeing to a set of comprehensive contractual terms," a website may still provide reasonable notice of terms if its interface "'reasonably focused' the otherwise unsuspecting user 'on the terms and conditions' being imposed." Good, 234 N.E.3d at 277 (quoting Kauders, 159 N.E.3d at 1052). While Gonneville claims not to have seen the disclosure of the Terms of Use when placing her orders, this "objective test" turns on whether the website offered "a reasonably prudent [user] notice of the [terms being offered]." Id. (alterations in original) (quoting Archer, 190 N.E.3d at 1034).

Courts have classified the type of online agreement on Lens.com's website as a "hybridwrap agreement," Gaker v. Citizens Disability, LLC, 654 F. Supp. 3d 66, 73 (D. Mass. 2023), or "sign-in wrap agreement," Keebaugh, 100 F.4th at 1014. With this type of

13

online agreement, the website notifies the user that she is agreeing to hyperlinked terms by clicking a specific button but does not require that the user either review those terms or check a box confirming her assent to those terms. See Keebaugh, 100 F.4th at 1014; Gaker, 654 F. Supp. 3d at 73. Although classifying an online agreement does not by itself resolve the question of reasonable notice, see Marshall v. Georgetown Mem'l Hosp., 112 F.4th 211, 219 n.6 (4th Cir. 2024); Good, 234 N.E.3d at 281 n.29, courts usually "give effect to hybridwrap terms where the button required to perform the action manifesting assent . . . is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms,'" Gaker, 654 F. Supp. 3d at 73 (alteration in original) (quoting Anand v. Heath, No. 19-cv-00016, 2019 WL 2716213, at *4 (N.D. Ill. June 28, 2019)); see Ball v. Skillz Inc., No. 20-cv-00888, 2020 WL 6685514, at *3 (D. Nev. Nov. 12, 2020) ("Courts have found that this type of hybrid agreement gives proper notice to consumers if (1) the hyperlink to the terms is close to the button that users must interact with and (2) users are given a reasonable opportunity to read the terms and understand the consequences of their assent before clicking through."), aff'd sub nom. Roe v. Skillz, Inc., 858 F. App'x 240 (9th Cir. 2021) (memorandum).

The question is whether the disclosure on Lens.com's website

provided reasonable notice to Gonneville that she was agreeing to the Terms of Use by proceeding with an order. The disclosure is not far below the parts of the webpage "where the user [is] required to focus," so a reasonably prudent user would see it. Kauders, 159 N.E.3d at 1053. The disclosure is also not buried in a large chunk of text. See Adams v. Am.'s Test Kitchen, LP, 680 F. Supp. 3d 31, 39 (D. Mass. 2023) (declining to enforce online terms because the notice was five paragraphs under the button the user clicked to start a free trial), appeal dismissed, No. 23-1592 (1st Cir. July 17, 2024). Rather, the disclosure appears by itself directly beneath the "Continue" button that the user clicks to reach the final stage of the checkout process. See, e.g., Keebaugh, 100 F.4th at 1020-21 (enforcing online terms where the notice was "[d]irectly beneath the operative Play button"); Selden v. Airbnb, Inc., 4 F.4th 148, 156-57 (D.C. Cir. 2021) (same where the notice was "[d]irectly below the" sign-up buttons); Ball, 2020 WL 6685514, at *3 (same where the notice was "immediately underneath the 'Next' button"). And the "Shipping Information" page containing the disclosure is relatively uncluttered, with plenty of white space and no distracting images. Compare Good, 234 N.E.3d at 278 (finding reasonable notice where "[t]he link to the terms of use was not buried on a cluttered screen or presented inconspicuously at the tail end of a cumbersome registration and payment process"), with Gaker, 654 F. Supp. 3d at 75 (giving weight to the fact that "the

15

website plainly d[id] all that it c[ould] to divert the user's attention away from the terms," including displaying "images of gold coins and dollar signs").

The language and formatting of the disclosure further support the conclusion that the Lens.com website provided Gonneville with reasonable notice of the Terms of Use. To be sure, the disclosure, with its small gray font, hardly jumps off the page. But the disclosure is visible and legible. See Keebaugh, 100 F.4th at 1021; Selden, 4 F.4th at 156-57; Ball, 2020 WL 6685514, at *3; see also Gaker, 654 F. Supp. 3d at 75 (holding that a hybridwrap agreement was not enforceable in part because "the terms were printed in smaller font than other language on the page, and appeared in blue font against a blue background"). The language of the disclosure and its embedded hyperlink -- "By continuing you agree to our Terms of Use & Privacy Policy," Dkt. 38-1 at 0:43 -- notifies the user that there are terms to which she would be bound if she indicates her assent. See Good, 234 N.E.3d at 284 n.33 (explaining that the notice need only "put users on reasonable notice that there are terms and . . . make those terms readily available" rather than "highlight particular terms"). The disclosure also makes manifest that clicking the "Continue" button constitutes assent to the contractual terms. See Oberstein, 60 F.4th at 516; Good, 234 N.E.3d at 279 n.22; cf. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 858 (9th Cir. 2022) (explaining that the statement "'I

16

understand and agree to the Terms & Conditions' . . . did not indicate to the user what action would constitute assent to those terms and conditions").

Finally, the disclosure adequately conveys that it includes a hyperlink to the Terms of Use. Gonneville stresses that the disclosure uses only underlining to designate the hyperlink rather than both underlining and blue font as is customary. See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 63 (1st Cir. 2018); Good, 234 N.E.3d at 279-80. But "not all hyperlinks need to have the same characteristics" in order to convey reasonable notice to the user of a website. Cullinane, 893 F.3d at 63; see Edmundson v. Klarna, Inc., 85 F.4th 695, 706-07 (2d Cir. 2023) (enforcing online terms where the hyperlink was underlined but not in blue font); Selden, 4 F.4th at 157 (same where the hyperlink was in red font and not underlined). A reasonably prudent user of the Lens.com website would recognize the underlined phrase "Terms of Use" as a hyperlink, especially because the website designates other hyperlinks using the same formatting. See Selden, 4 F.4th at 157.

In short, a reasonably prudent user would see the disclosure after filling out the shipping fields and moving to the "Continue" button. The disclosure adequately conveys that there are terms to which the user would be bound if she proceeds with the order. Gonneville therefore had reasonable notice of the Terms of Use.

For similar reasons, the Court concludes that Gonneville

manifested assent to the Terms of Use. While Lens.com's website does not require the user to check a box stating that she agrees to the Terms of Use, this most direct method of assent is "not necessarily required." Kauders, 159 N.E.3d at 1050 (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 238 (2d Cir. 2016)); see Ball, 2020 WL 6685514, at *4. As noted, the disclosure on Lens.com's website clearly indicated that clicking the "Continue" button constitutes an agreement to the Terms of Use. Thus, "[t]he connection between the action [that manifests assent] and the terms [is] direct [and] unambiguous." Good, 234 N.E.3d at 286 (second and fourth alterations in original) (quoting Kauders, 159 N.E.3d at 1054). Gonneville concedes that she clicked on the "Continue" button when placing her three online orders. See Dkt. 42-1 ¶ 3. By doing so, she unambiguously assented to the Terms of Use.[5]

As previously mentioned, the only argument that Gonneville raises against transfer of this action under § 1404(a) is that she did not enter into a contract incorporating the forum selection cause. Having rejected this argument, the Court transfers this action to the District of Nevada.

## ORDER

For the reasons stated above, Lens.com's motion to transfer

---

[5] In light of this conclusion, the Court does not address Lens.com's alternative argument that Gonneville's amended complaint includes a binding admission that the Terms of Use constitute a valid contract.

(Dkt. 18) is **ALLOWED**. This action is hereby **TRANSFERRED** to the District of Nevada.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge